# 23-6456

**IN THE**

# United States Court of Appeals

**FOR THE SECOND CIRCUIT**

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

SAMARK JOSE LOPEZ BELLO, AKA SAMARK LOPEZ DELGADO, AKA SIERRA LIMA,

*Defendant-Appellant*,

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**OPENING BRIEF OF DEFENDANT-APPELLANT SAMARK JOSÉ LÓPEZ BELLO**

Edward Y. Kim
Jonathan F. Bolz
Vlad Shafran
KRIEGER KIM & LEWIN LLP
350 Fifth Avenue, 77th Floor
New York, New York 10118
Tel.: (212) 390-9550
*Attorneys for Defendant-Appellant*

VICTOR MONES CORO, AKA SEALED DEFENDANT 1, ALEJANDRO MIGUEL LEON MAAL, AKA ALEJANDRO LEON, ALEJANDRO ANTONIO QUINTAVALLE YRADY, MICHOLS ORSINI QUINTERO, TAREK ZAIDAN EL AISSAMI MADDAH, AKA TARECK EL AISSAMI, AKA EL TROUPIAL, AKA TANGO ALPHA, AKA T.E.A., JOSELIT RAMIREZ CAMACHO, AKA J.L., AKA JOSE LIT, ALEJANDRO JAVIER MARIN, AKA SEALED DEFENDANT 1,

*Defendants.*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION................................................3

STATEMENT OF THE ISSUES......................................................4

STATEMENT OF THE CASE..........................................................4

   I.  Background ............................................................................4

   II.  Mr. López Bello's Motion to Dismiss....................................6

   III. The District Court's Rulings ..............................................7

SUMMARY OF ARGUMENT ........................................................9

STANDARD OF REVIEW .............................................................11

ARGUMENT .................................................................................11

   I.  Mr. López Bello Is Not a Fugitive ......................................12

       A.   Mr. López Bello Is Not a Traditional Fugitive ...............12

       B.   Mr. López Bello Is Not a Constructive-Flight Fugitive ........13

   II.  Even If Mr. López Bello Were a Fugitive, the District Court Erred in Applying the Fugitive Disentitlement Doctrine............................................20

       A.   Assuring the Enforceability of Any Decision .....................21

       B.   Flouting the Judicial Process....................................22

       C.   Discouragement of Flight.........................................22

       D.   Prejudice to the Government.....................................23

CONCLUSION ..............................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
No. 21-1043, 2023 WL 4239255 (U.S. June 29, 2023) ......................................20

*Antonio-Martinez v. I.N.S.*,
317 F.3d 1089 (2d Cir. 2003) .................................................................................21

*Degen v. United States*,
517 U.S. 820 (1996) ..................................................................................... 11, 21

*Empire Blue Cross & Blue Shield v. Finkelstein*,
111 F.3d 278 (2d Cir. 1997) ........................................................................ 12, 21

*United States v. Bescond*,
24 F.4th 759 (2d Cir. 2021) ........................................................................ passim

*United States v. Blanco*,
861 F.2d 773 (2d Cir. 1988) ...................................................................................13

*United States v. Cornelson*,
595 F. Supp. 3d 265 (S.D.N.Y. 2022) ......................................................... passim

*United States v. Coro*,
19 Cr. 144 (AKH) (S.D.N.Y.) ....................................................................... passim

*United States v. Morgan*,
254 F.3d 424 (2d Cir. 2001) ...................................................................................11

*United States v. Schreiber*,
535 F. Supp. 1359 (S.D.N.Y. 1982) ....................................................................13

*United States v. Swen*,
07 Cr. 462 (LAP) (S.D.N.Y.) ...............................................................................16

**Statutes and Regulations**

8 U.S.C. § 1182(a)(2)(C) ...................................................................15

18 U.S.C.
    § 3231 ..............................................................................................3
    § 371 ....................................................................................... passim

21 U.S.C.
    § 1901 .........................................................................................1, 4
    § 1904(c) ..................................................................................... 6, 12

50 U.S.C. § 1702(b)(4).......................................................................16

31 C.F.R.
    § 560.210(c) ...................................................................................16
    § 583.205(c) ...................................................................................16
    § 598.101 .........................................................................................5

**Other Authorities**

U.S. Dep't of the Treasury, *Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark López Bello*, (Feb. 13, 2017), https://home.treasury.gov/news/press-releases/as0005 ..............5

## **INTRODUCTION**

Mr. López Bello is a Venezuelan national who previously stayed in the United States pursuant to temporary, non-immigrant visas. In early 2017, while Mr. López Bello was outside the United States, the government sanctioned him under the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq.* Because those sanctions effectively barred him from reentering the United States, Mr. López Bello has not since returned to this country and has lived full-time in his home country of Venezuela.

Two years after sanctioning Mr. López Bello, the government charged him with violating sanctions under the Kingpin Act and a conspiracy to defraud the government under 18 U.S.C. § 371. Mr. López Bello's conduct did not change after the filing of charges – he continued openly living in Venezuela, as he had for years prior to the filing of the indictment. Yet, when Mr. López Bello mounted significant challenges to the indictment, the District Court (Hellerstein, J.) erroneously labeled him a fugitive and disentitled him from filing any motions.

Contrary to the District Court's ruling, Mr. López Bello is entitled to his day in court. Under a straightforward application of *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021), a defendant who is alleged to have committed misconduct abroad and then simply remains in his home country is not a fugitive. The District Court reasoned that Mr. López Bello either left the country or remained abroad

1

based on a fear of prosecution. However, at the time Mr. López Bello left the United States, he had not yet even been sanctioned, much less charged with violating those sanctions. His reason for departing the United States was unrelated to the instant charges. And after leaving the United States, he did not return because the government's sanctions effectively prohibited him from reentering the country. Instead, he continued living openly in Venezuela – his home country.

The District Court also erroneously relied on Mr. López Bello's prior ties to the United States to conclude that he constructively evaded this prosecution by refusing to return. But there is no dispute that by the time the government charged Mr. López Bello, he was living in Venezuela and had not traveled to the United States in over two years. Mr. López Bello's prior connections to the United States are thus not relevant to Mr. López Bello's fugitivity status. In simpler terms, Mr. López Bello intended to remain in his home country of Venezuela both before and after the government charged him. His failure to travel to the United States was neither evasion nor flight.

After inappropriately labeling Mr. López Bello a fugitive, the District Court compounded its errors by finding that the purposes of the fugitive disentitlement doctrine were served by his disentitlement, when in fact all the relevant factors militate against applying the doctrine. Mr. López Bello has not flouted the judicial process, his actions caused no significant prejudice to the government, and

2

disentitlement here has no meaningful deterrence value. Lastly, as in *Bescond*, ensuring the enforceability of decisions that may be issued against Mr. López Bello is not a weighty enough interest to justify the harsh penalty of disentitlement. *See id.* at 774.

Mr. López Bello is entitled to be heard in his own criminal case. The charges have caused him immense reputational and financial harm. Throughout this prosecution, the government has made him a target for its criticism of the Venezuelan regime – asserting numerous irrelevant contentions that have no bearing on Mr. López Bello's alleged offenses. Now, Mr. López Bello has also been labeled a fugitive, despite simply remaining in his home country, as this Court's precedent allows him to do. We ask this Court to reverse a ruling that is deeply prejudicial to Mr. López Bello, contravenes the applicable law, and improperly expands the fugitive disentitlement doctrine.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over Mr. López Bello's motion to dismiss under 18 U.S.C. § 3231. This Court has jurisdiction to review the District Court's fugitive disentitlement ruling under the collateral order doctrine. *See Bescond*, 24 F.4th at 770, 773.

3

## STATEMENT OF THE ISSUES

1.     Whether a defendant who lawfully left the United States, was charged based on alleged conduct that occurred after his departure, and simply remained in his home country after being charged qualifies as a fugitive under the fugitive disentitlement doctrine.

2.     Whether the purposes of the fugitive disentitlement doctrine are served by disentitling such a defendant.

## STATEMENT OF THE CASE

### I.     Background

Mr. López Bello is a Venezuelan citizen who owned property in the United States and previously stayed in the country pursuant to temporary, non-immigrant visas.  A102.

In early February 2017, Mr. López Bello departed the United States.  He left the country from a lawful port of departure using a valid passport.  A104.  On February 13, 2017, while Mr. López Bello was abroad, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated Mr. López Bello as a Specially Designated Narcotics Trafficker ("SDNT") pursuant to the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq.* (the "Kingpin Act").  OFAC alleged that Mr. López Bello provided material assistance and financial support to the former Vice President of Venezuela, Tareck Zaidan El

4

Aissami Maddah ("El Aissami"), who was designated on the same day based on his alleged narcotics trafficking activities. *See* U.S. Dep't of the Treasury, *Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark López Bello* (Feb. 13, 2017), available at https://home.treasury.gov/news/press-releases/as0005 (last visited Aug. 21, 2023). In its public announcement, OFAC warned that "[a]s a result of today's action, U.S. persons are generally prohibited from engaging in transactions or otherwise dealing with" the sanctioned individuals and entities, "and any assets the individuals and entities may have under U.S. jurisdiction are frozen." *Id.*

At the time of his designation, the government did not file any charges against Mr. López Bello. Nor did it issue a warrant for his arrest. However, and as discussed further below, the designation effectively revoked his visa and barred him from reentering the United States. As a result, Mr. López Bello did not return and has since lived full-time in his home country of Venezuela.

More than two years after Mr. López Bello left the United States, the government unsealed a five-count indictment charging Mr. López Bello and others with violations of the Kingpin Act and the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. § 598.101 *et seq.* (2020). A50–68. The government later filed a superseding indictment on March 13, 2020 (the "Indictment"), realleging the Kingpin Act offenses and adding a charge under 18 U.S.C. § 371 for

5

conspiracy to defraud OFAC.  A69–98.  According to the government, Mr. López

Bello and his co-defendants committed these offenses by using entities and

individuals that were within the United States to charter flights on U.S.-registered

planes between foreign countries.  A69–72, A80–81.  Notably, the alleged conduct

occurred between February 2017 and March 2019 – after Mr. López Bello left the

United States and while he was living abroad.  A69, A79, A80–82, A86, A90–92,

A94.

## II.     Mr. López Bello's Motion to Dismiss

On September 16, 2022, Mr. López Bello moved to dismiss the Indictment.

A99.  Mr. López Bello argued that the Kingpin Act's prohibitions apply only to

U.S. persons and those alleged to have acted while within the United States, *see* 21

U.S.C. § 1904(c), and as Mr. López Bello was neither, he was not within the class

of persons covered under the statute.  Def. Memo in Support of Motion to Dismiss

at 4–13, *United States v. Coro*, 19 Cr. 144 (S.D.N.Y. Sept. 16, 2022), ECF No.

255.  In addition, he argued that the Kingpin Act lacked extraterritorial reach and

that the Indictment failed to allege domestic conduct within the Kingpin Act's

focus.  *Id.* at 13–15.  Mr. López Bello also sought dismissal of the 18 U.S.C. § 371

charge, challenging the government's charging theory and arguing that the

government's application of the statute was impermissibly extraterritorial.  *Id.* at

16–20.  Lastly, anticipating the government's attempt to disentitle him, Mr. López

6

Bello noted in his motion that, as a foreign national who has never fled the United States – constructively or otherwise – he does not meet any definition of fugitive under the fugitive disentitlement doctrine. *Id.* at 20–22. He also argued that the purposes of the doctrine would not be served by his disentitlement. *Id.* at 22–25.

The government filed an opposition brief on October 21, 2022, failing to address the merits and asking the District Court to decline consideration of Mr. López Bello's motion based on the fugitive disentitlement doctrine. Gov't Memo in Opp'n, *United States v. Coro*, 19 Cr. 144 (S.D.N.Y. Oct. 21, 2022), ECF No. 256. After Mr. López Bello filed a reply to the disentitlement issue, the district court ordered the government to respond to the merits of Mr. López Bello's motion. A109. The government submitted a supplemental opposition brief on January 13, 2023. Gov't Supplemental Memo in Opp'n, *United States v. Coro*, 19 Cr. 144 (S.D.N.Y. Jan. 13, 2023), ECF No. 265. Citing additional facts outside the Indictment, the government argued that the Kingpin Act applied to Mr. López Bello's conduct, that it properly alleged the 18 U.S.C. § 371 count, and that the presumption against extraterritoriality does not bar a prosecution of Mr. López Bello. *See id.* at 9–40.

### III. The District Court's Rulings

The District Court held oral argument on Mr. López Bello's motion to dismiss on April 26, 2023. A110–43. Although the government conceded that the

7

conduct alleged in the Indictment occurred after Mr. López Bello left the country in 2017, A117, the District Court concluded that Mr. López Bello, by leaving the United States before that conduct had occurred, had "fled, evaded, and escaped an inevitable arrest," A122. The court reasoned that Mr. López Bello was a fugitive because his failure to return to the United States after 2017 stemmed from a "concern[] about being indicted for crimes that caused him to be labeled a kingpin and assister of kingpins." A127–28.

The District Court issued a subsequent written order on May 2, 2023, denying Mr. López Bello's motion. A144–47. In that order, the District Court held that Mr. López Bello was a constructive-flight fugitive because of his prior ties to the United States, which, in the District Court's view, made his presence abroad "inextricable from this prosecution." A145. Without further elaboration, the District Court also determined that the purposes of the doctrine were served by disentitlement. A146. In the alternative, the District Court reached the merits of Mr. López Bello's motion. It concluded that the Kingpin Act applied to the conduct alleged in the Indictment and rejected Mr. López Bello's extraterritoriality arguments. A146–47. The District Court also denied Mr. López Bello's arguments concerning the 18 U.S.C. § 371 charge. *Id.*

Mr. López Bello timely filed his notice of appeal on May 9, 2023, a week after the District Court entered the written order denying his motion. A148–49.

8

# SUMMARY OF ARGUMENT

1.  The District Court erred in labeling Mr. López Bello a fugitive.  In *Bescond*, this Court held that a defendant alleged to have violated the law while outside the United States and who subsequently lived openly in her home country was not a fugitive.  24 F.4th at 771–75.  Like the defendant in *Bescond*, Mr. López Bello was outside the United States during the alleged offenses, and he continues to lawfully reside in his home country.

The District Court purported to distinguish *Bescond* based on Mr. López Bello's prior ties to the United States.  In particular, the District Court reasoned that Mr. López Bello actively abandoned those ties and refused to return to the United States based on a fear of prosecution.  This conclusion is factually unsupported.

First, there was no factual basis for the District Court to determine that Mr. López Bello initially left the United States – and then remained abroad – based on a fear of criminal prosecution.  That conclusion defies logic, as Mr. López Bello could not have anticipated criminal charges based on violating sanctions that had not yet been issued against him.  The government has proffered no evidence – nor does it exist – that Mr. López Bello was aware of any potential investigation or charges before the government unsealed the charges against him in 2019.  What

9

the record makes clear is that it was Mr. López Bello's sanctions designation that prevented him from returning to the United States, not fear of criminal prosecution.

Second, Mr. López Bello's former ties to the United States are irrelevant. To the extent Mr. López Bello had any meaningful ties with the United States, the government severed them when it designated him as an SDNT in early February 2017. By the time he was charged, Mr. López Bello had been effectively barred from the United States for two years and had no plans to return. Because Mr. López Bello intended to remain in Venezuela both before and after the charges, the District Court erred by inferring constructive evasion.

2. Even assuming Mr. López Bello is a fugitive, the District Court also erred when it concluded, without explanation, that disentitlement served the purposes of the fugitive disentitlement doctrine. Here, too, the District Court disregarded this Court's holding in *Bescond*.

First, Mr. López Bello's disentitlement serves no valid deterrence value because it penalizes defendants for conduct sanctioned by this Court. Namely, under *Bescond*, Mr. López Bello is allowed to reside openly in his home country and challenge his charges from abroad. *Id.* at 772, 774. Second, Mr. López Bello is not flouting the judicial process by litigating from abroad. Since his designation, Mr. López Bello has worked diligently to clear his name through the U.S. legal system, including by challenging his designation, applying for licenses, objecting

10

to the seizure of his property, and contesting the charges in this case. Third, the District Court erroneously accepted the government's generic claims of prejudice while failing to weigh the harm suffered by Mr. López Bello through disentitlement. *See id.* at 775 (finding that the district court failed to consider the countervailing prejudice to the defendant). Finally, as explained in *Bescond*, disentitling a defendant like Mr. López Bello is too strong a measure for ensuring the enforceability of decisions against defendants. *See id.* at 774.

## STANDARD OF REVIEW

"The issue of whether [a defendant] meets the definition of a 'fugitive' is reviewed *de novo*." *Bescond*, 24 F.4th at 771. Meanwhile, a district court's decision whether to disentitle a fugitive is reviewed for abuse of discretion. *See United States v. Morgan*, 254 F.3d 424, 426 (2d Cir. 2001).

## ARGUMENT

The District Court erred in disentitling Mr. López Bello. "Under the doctrine of fugitive disentitlement, a court may decline to entertain the claims of a defendant who is a fugitive from justice." *Bescond*, 24 F.4th at 764. The doctrine arises from the "inherent authority" of courts "to protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen v. United States*, 517 U.S. 820, 823 (1996). However, the doctrine only applies where the defendant is in fact a "fugitive" and where disentitlement "would serve

11

the doctrine's objectives." *Bescond*, 24 F.4th at 771. Mr. López Bello is not a fugitive, nor does disentitling him serve the doctrine's objectives.

### I.     Mr. López Bello Is Not a Fugitive

The District Court erred in labeling Mr. López Bello a fugitive. There are two types of fugitives in criminal cases: traditional fugitives and constructive-flight fugitives. *See id.* at 771–72. Mr. López Bello is neither.

### A.     <u>Mr. López Bello Is Not a Traditional Fugitive</u>

Mr. López Bello is plainly not a traditional fugitive, and the government conceded as much. A117–18. "A traditional fugitive is 'a person who, having committed a crime, flees from the jurisdiction of the court where a crime was committed or departs from his usual place of abode and conceals himself within the district.'" *Bescond*, 24 F.4th at 771 (quoting *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 281 (2d Cir. 1997) (alterations accepted)). It is undisputed that Mr. López Bello was last present in the United States years before the government filed its charges. Further, he did not flee from this jurisdiction. He left the country from a lawful port of departure before he was charged or sanctioned. "Because he did not commit the alleged crimes in the United States, he did not flee from the United States, and he did not otherwise conceal himself," Mr. López Bello "does not meet the definition of a traditional fugitive." *United*

*States v. Cornelson*, 595 F. Supp. 3d 265, 270 (S.D.N.Y. 2022); *see also United States v. Schreiber*, 535 F. Supp. 1359, 1363 (S.D.N.Y. 1982).

    B.    <u>Mr. López Bello Is Not a Constructive-Flight Fugitive</u>

Nor does Mr. López Bello meet the definition of a constructive-flight fugitive.  A constructive-flight fugitive is "a person who allegedly committed crimes while in the United States but who was outside the country – for whatever reason – when [h]e learned that [his] arrest was sought and who then refused to return to the United States in order to avoid prosecution."  *Bescond*, 24 F.4th at 772 (internal quotation marks omitted); *see also United States v. Blanco*, 861 F.2d 773, 779 (2d Cir. 1988) ("A person can be said to be a fugitive when, while abroad, they learn that they are under indictment and make no effort to return to the United States to face charges.").

In *Bescond*, this Court clarified that a defendant who committed the alleged conduct while outside the United States and simply remained in her home country after being charged "does not qualify as a constructive-flight fugitive."  *Bescond*, 24 F.4th at 772.  The Court further explained that such a defendant is under "no obligation to appear in the United States."  *Id.* at 767.  This is especially the case when the defendant's "presence abroad" is not "in any part covert or suspect: a hideout, sanctuary, or escape from the reach of law."  *Id.* at 773.

13

Mr. López Bello lawfully left the United States in early February 2017. A104. He departed this country before he was sanctioned and, therefore, before one could possibly allege that he committed the crime of violating those same sanctions. It was not until two years after his departure from this country that he was charged. Thus, there can be no dispute that, as in *Bescond*, Mr. López Bello was outside this country when the alleged offenses were committed.

Similarly, like the defendants in *Bescond* and *Cornelson*, Mr. López Bello resided in his home country for years "prior to being notified that his arrest was being sought." *Cornelson*, 595 F. Supp. 3d at 271; *see also Bescond*, 24 F.4th at 772, 774. And "[i]n the time after his arrest was openly sought," Mr. López Bello "simply remained at home" because his home country protects its citizens from extradition, which this Court's decision in *Bescond* allows him to do. *Cornelson*, 595 F. Supp. 3d at 271 (internal quotation marks omitted; alterations accepted); *see Bescond*, 24 F.4th at 767 (explaining that a defendant remaining at home in a non-extraditing country is not required to appear in the United States). Mr. López Bello's presence abroad is also not "covert," *Bescond*, 24 F.4th at 773, which the government conceded below, *see* Gov't Memo in Opp'n at 43, *United States v. Coro*, 19 Cr. 144 (S.D.N.Y. Oct. 21, 2022), ECF No. 256 (noting that Mr. López Bello's presence in Venezuela "may not be covert at this point"). Mr. López Bello is thus not a constructive-flight fugitive.

14

Nonetheless, the District Court erroneously held that Mr. López Bello was a constructive-flight fugitive. At oral argument, the District Court stated that Mr. López Bello was a fugitive because his departure and subsequent absence from the United States was due to a fear of prosecution. A122, A127–28. In its written order, the court further noted that prior to being sanctioned in 2017, Mr. López Bello "lived in the United States with the intention of making it his permanent home." A145. The court reasoned that Mr. López Bello's pre-designation ties to the United States made his post-designation presence abroad "inextricable from this prosecution." *Id.*

The District Court's holding was erroneous for several reasons.

First, Mr. López Bello's presence abroad does not stem from the instant charges or an attempt to avoid prosecution.

As set forth above, Mr. López Bello left this country lawfully. OFAC designated him as an SDNT in February 2017, a week after his departure. That designation effectively revoked his visa and prohibited him from reentering the country.[1] What is more, if Mr. López Bello had returned after being designated, he

---

[1] When enacting the Kingpin Act, Congress also amended the Immigration and Nationality Act to deem inadmissible any "alien who . . . the Attorney General knows or has reason to believe . . . is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking" of controlled substances or chemicals as defined by federal law. 8 U.S.C. § 1182(a)(2)(C); *see*

would have violated the Kingpin Act by engaging in transactions or dealings within the United States, the very crime he is now accused of committing. *See* 21 U.S.C. § 1904(c).[2]  In short, the government's own actions barred Mr. López Bello from returning to this country and caused him to remain in his home country of Venezuela. *Cf.* Hr.'g Tr. at 6, 11–12, 20–21, *United States v. Swen*, 07 Cr. 462 (LAP) (S.D.N.Y. May 28, 2015), ECF No. 41 (declining to disentitle defendant litigating from abroad after being deported).

Then, two years after Mr. López Bello was prohibited from entering this country, he was indicted.  Since being charged, Mr. López Bello has continued to live "at home abroad, without concealment or evasion." *Bescond*, 24 F.4th at 773. Under the law of this Circuit, that does not render him a fugitive.

---

*also* Intelligence Authorization Act for Fiscal Year 2000, Pub. L. No. 106-120 (enacting the Kingpin Act and amending 8 U.S.C. § 1182).

[2] It is worth noting that the Kingpin Act and the pertinent regulations lack a travel exemption, which is contained in other sanction regimes. *See*, *e.g.*, 50 U.S.C. § 1702(b)(4) (the International Emergency Economic Powers Act providing that the authority it grants to the President "does not include the authority to regulate or prohibit, directly or indirectly . . . any transactions ordinarily incident to travel to or from any country, including importation of accompanied baggage for personal use, maintenance within any country including payment of living expenses and acquisition of goods or services for personal use, and arrangement or facilitation of such travel including nonscheduled air, sea, or land voyages."); 31 C.F.R. §§ 560.210(c), 583.205(c) (travel exemptions under both the Iranian Transactions and Sanctions Regulations and the Global Magnitsky Sanctions Regulations). Congress's decision to omit a travel exemption in the Kingpin Act shows its intent to prevent any parties designated under the Kingpin Act from traveling to the United States.

In support of its conclusion that Mr. López Bello was evading arrest, the District Court noted that "there was a public announcement that Mr. López Bello was a kingpin or helped kingpins, and there were sanctions that were ordered against him or anyone dealing with him." A122. According to the District Court, "a person so publicly named can legitimately feel that a prosecution is next and I'd better get out of here." *Id.* It appears that the District Court may have misunderstood the chronology of events, believing that Mr. López Bello left the country only after he was sanctioned, when in fact he left before.

But in any event, the public announcement concerning Mr. López Bello's designation occurred a week after his departure. There was no basis to conclude that Mr. López Bello suspected his arrest – or even his designation for sanctions – was imminent when he left the United States. Indeed, OFAC's investigative process is such that OFAC compiles a closed administrative record, oftentimes relying on classified or otherwise restricted information. Thus, targets of an OFAC sanctions designation investigation are normally only alerted to the existence of that investigation after OFAC has designated them for sanctions, which in this case was after Mr. López Bello left the country.

Nor is there any evidence that Mr. López Bello departed this country because he suspected he would be arrested for any other crimes, as the District Court at one point seemed to suggest. A127–28. In short, he was under no threat

17

of criminal liability prior to the charges being filed, and he simply resided in his home country after being charged. Mr. López Bello is not a criminal suspect evading arrest.

Second, the District Court erred in relying on Mr. López Bello's pre-designation ties to the United States, noting at one point that Mr. López Bello had "lived a luxurious life here." A145. But any such ties – no matter how luxurious – are irrelevant. To the extent Mr. López Bello had meaningful ties to this country, they were cut by the government two years prior to the instant charges. By the time Mr. López Bello learned of the charges against him in 2019, he had been living full-time in his home country of Venezuela for years. There was nothing improper about Mr. López Bello's decision to stay in Venezuela after being charged. He simply remained "at home, as [his] home country permits [him] to do." *Bescond*, 24 F.4th at 772.

On this point, the District Court ignored Judge Koeltl's decision in *United States v. Cornelson*, which is instructive here. In *Cornelson*, the defendant did not commit the alleged crimes while he was in the United States. 595 F. Supp. 3d at 271. He stopped traveling to the United States years prior to receiving notice of the charges. *Id.* And, at the time that his arrest was sought, the defendant lived in his home country, which maintained a policy against extraditing its citizens to the United States. *Id.* The court in *Cornelson* found that on those facts, the defendant

18

did "not fit the definition of a constructive-flight fugitive." *Id.* The same analysis applies here. Notably, the court in *Cornelson* rejected the rationale relied on by the District Court to distinguish *Bescond* – the defendant's prior ties to the United States. In *Cornelson*, the court explained that such ties "[did] not change the facts that [the defendant] committed the alleged crimes abroad, did not flee from the United States, did not conceal himself, and had no obligation to enter the United States to face arrest." *Id.*

Lastly, the District Court failed to consider that disentitlement is particularly unwarranted for defendants like Mr. López Bello, who challenge their charges under principles of extraterritoriality. *See Bescond*, 24 F.4th at 773 (noting that "if our law does not reach [the defendant] or [his] conduct, can it be said that [he] is in flight from it?"). Mr. López Bello mounted just such a challenge. *See* Def. Memo in Support of Motion to Dismiss at 13–15, 19–20, *United States v. Coro*, 19 Cr. 144 (S.D.N.Y. Sept. 16, 2022), ECF No. 255; Def. Supplemental Memo in Support of Motion to Dismiss at 13–23, *United States v. Coro*, 19 Cr. 144 (S.D.N.Y. Feb. 3, 2023), ECF No. 268. Yet Mr. López Bello has been labeled a fugitive, despite the government's failure to allege any relevant acts within the United States. *See Bescond*, 24 F.4th at 773 (describing concerns about labeling a defendant a fugitive

19

"regardless of whether the charged statute reaches individuals outside our territory").[3]

In sum, there was no basis for the District Court to depart from *Bescond*. Mr. López Bello permanently resided in Venezuela before the government filed its charges. He continues to live in his home country. Under binding precedent, he has no obligation to return to the United States and is entitled to be heard.

## II. Even If Mr. López Bello Were a Fugitive, the District Court Erred in Applying the Fugitive Disentitlement Doctrine

The District Court also erred in concluding that disentitling Mr. López Bello would serve the objectives of the doctrine. The fugitive disentitlement doctrine advances four purposes: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's

---

[3] Mr. López Bello disagrees with the District Court's alternative ruling addressing the merits of his motion, and, if not for being disentitled, would have filed a motion for reconsideration. The District Court erred in failing to apply the appropriate two-step legal framework in analyzing Mr. López Bello's extraterritoriality arguments. Further, just as in *Bescond*, case law issued after the District Court's decision lends further support to Mr. López Bello's extraterritoriality argument. *See Bescond*, 24 F.4th at 772–73; *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, No. 21-1043, 2023 WL 4239255, at *6 (U.S. June 29, 2023) (clarifying that, for purposes of extraterritoriality analysis, when "Congress . . . premise[s] liability on a specific action . . . that specific action would be the conduct relevant to any focus").

escape." *Finkelstein*, 111 F.3d at 280. District courts must "exercise their discretion to apply the doctrine bearing these objectives in mind." *Bescond,* 24 F.4th at 774 (internal quotation marks omitted). Because disentitlement is a sanction "most severe," the Supreme Court has instructed that "[p]rinciples of deference counsel restraint in resorting to" disentitlement and "require its use to be a reasonable response to the problems and needs that provoke it." *Degen*, 517 U.S. at 823–24, 829.

The District Court failed to articulate why the purposes of the doctrine are served by Mr. López Bello's disentitlement. In truth, each justification weighs strongly against disentitling Mr. López Bello.

A.   Assuring the Enforceability of Any Decision

As it was in *Bescond*, disentitling Mr. López Bello is too harsh of a measure to guarantee the enforceability of an adverse decision. *Bescond*, 24 F.4th at 774. Mr. López Bello is not a defendant who, after committing crimes within the United States, is seeking an unfair advantage by hiding abroad. *See Antonio-Martinez v. I.N.S.*, 317 F.3d 1089, 1093 (2d Cir. 2003) (noting the "heads I win, tails you'll never find me" scenario that accompanies motions filed by defendants who have not submitted to the court's jurisdiction). Mr. López Bello left the country before being sanctioned or indicted. He is not hiding from the authorities but openly resides in his home country of Venezuela. Under this Court's precedent, he is

21

allowed to continue residing in his home country and has no obligation to return to the United States to challenge the Indictment.

    B.    <u>Flouting the Judicial Process</u>

Mr. López Bello has not "flout[ed] the judicial process" by attempting to litigate from abroad. *Bescond*, 24 F.4th at 773 (internal quotation marks omitted). Moreover, since being designated, Mr. López Bello has properly attempted to clear his name through the U.S. legal system – by contesting the instant charges, challenging his designation, applying for licenses, and objecting to the seizure of property in the United States. As with the defendant in *Bescond*, all Mr. López Bello "has done is stay home, where [h]e remained during the allegedly criminal scheme, and where [his] government permits h[im] to live freely." *Id.*

    C.    <u>Discouragement of Flight</u>

Disentitling Mr. López Bello would not discourage flight. In other words, "there exists no cohort of fugitives who would perceive an adjudication of [Mr. López Bello's] motion[] as inducement or inspiration to flee the jurisdiction of our courts." *Id.* This Court emphasized that defendants like Mr. López Bello who lawfully reside in their home country have "no obligation to appear in the United States" and thus disentitlement would improperly "impose[] a penalty for staying home." *Id.* at 767. Further, even assuming there is any deterrence value in disentitling Mr. López Bello, it is clearly "outweigh[ed] [by] the countervailing

22

harm to the judicial process, which seeks to resolve cases on the merits whenever possible." *Cornelson*, 595 F. Supp. 3d at 273 (quoting *Bescond*, F.4th at 774).

### D.    Prejudice to the Government

Any prejudice to the government is slight when compared to the harm inflicted on Mr. López Bello. Notably, the District Court here failed to "consider the countervailing prejudice" to the defendant. *Bescond*, 24 F.4th at 775. The government imposed substantial reputational damage on Mr. López Bello by accusing him of committing the instant crimes. The government has exacerbated that harm by asserting allegations in connection with its disentitlement argument that are irrelevant to the charges, painting Mr. López Bello as an agent of the Venezuelan regime and implying that Mr. López Bello was involved in drug trafficking, money laundering, and the oppression of the Venezuelan people.[4] This

---

[4] For example, the government asserted that Mr. López Bello has helped perpetuate the current regime in Venezuela, which, according to the government, has "abused [its] power by committing heinous extrajudicial killings[] and imprisoning and threatening opposition politicians who challenge [its] authority." Gov't Memo in Opp'n at 6, *United States v. Coro*, 19 Cr. 144 (S.D.N.Y. Oct. 21, 2022), ECF No. 256; *see also id.* at 13–14. Despite having not charged Mr. López Bello with any money laundering offenses, the government also claimed that Mr. López Bello "has . . . laundered illicit proceeds for other senior Venezuelan officials and has engaged in corrupt transactions." *Id.* at 7. In its briefing, the government has also written at length about the narcotics-trafficking activities of others, implying that Mr. López Bello was involved in such conduct. *See id.* at 6 (describing how "Maduro and several of his closest advisors have . . . participated in a multi-decade narco-terrorism conspiracy, abusing the Venezuelan people and corrupting the legitimate institutions of Venezuela – including parts of the military, intelligence

23

Court highlighted the importance of considering such reputational harm when deciding whether to disentitle a defendant, noting that disentitlement improperly "enables the government to coerce [the defendant's] presence in court by imposing financial, reputational, and family hardship regardless of [his] guilt or innocence, and regardless of whether the indictment charges violations of a statute that applies extraterritorially." *Id.* Meanwhile, the prejudice identified by the government – evidence growing stale and the cost of litigation – are present in any case. The government has failed to explain why these factors are particularly significant based on the facts of this case.

---

apparatus, legislature, and the judiciary – to facilitate the importation of tons of cocaine into the United States.") Indeed, the District Court's analysis appears at one point to have been affected by the government's irrelevant assertions, as the District Court initially believed that the Indictment charged Mr. López Bello with smuggling drugs into the United States. A137.

24

## **CONCLUSION**

This Court should reverse the District Court's decision to label Mr. López Bello a fugitive and disentitle him.  The District Court's ruling is deeply prejudicial to Mr. López Bello, who is now barred from further motion practice[5] and has been unfairly labeled a fugitive despite lawfully residing in his home country and diligently seeking relief through the U.S. judicial system.

Dated:      August 21, 2023
            New York, New York

                      Respectfully submitted,

By:   /s/ Edward Y. Kim
       Edward Y. Kim
       Jonathan F. Bolz
       Vlad Shafran
       KRIEGER KIM & LEWIN LLP
       350 Fifth Avenue, 77th Floor
       New York, New York 10118
       Tel.: (212) 390-9550

       *Attorneys for Defendant-Appellant*

---

[5] Although Mr. López Bello would like to file certain motions, including a motion for reconsideration and a motion for a bill of particulars, he is barred from doing so by the District Court's fugitive disentitlement ruling.  A128 (District Court holding that "Mr. Lopez Bello is a fugitive not entitled to make other aspects of his motion or any other proceedings in this country").

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a) because, excluding certain parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,928 words.

This document complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word (2011) in 14-point Times New Roman Font.

Dated: August 21, 2023 <u>/s/ Edward Y. Kim</u>
Edward Y. Kim