# 23-6456

*To Be Argued By*:
KEVIN SULLIVAN

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 23-6456

◄━━►

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

SAMARK JOSE LOPEZ BELLO, also known as
Samark Lopez Delgado, also known as Sierra Lima,

*Defendant-Appellant,*

(*Caption continued on inside cover*)

─────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA

DAMIAN WILLIAMS,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America.*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

KEVIN SULLIVAN,
NATHAN REHN,
*Assistant United States Attorneys,
Of Counsel.*

VICTOR MONES CORO, also known as Sealed Defendant 1, ALEJANDRO MIGUEL LEON MAAL, also known as Alejandro Leon, ALEJANDRO ANTONIO QUINTAVALLE YRADY, MICHOLS ORSINI QUINTERO, TAREK ZAIDAN EL AISSAMI MADDAH, also known as Tareck El Aissami, also known as El Troupial, also known as Tango Alpha, also known as T.E.A., JOSELIT RAMIREZ CAMACHO, also known as J.L., also known as Jose Lit, ALEJANDRO JAVIER MARIN, also known as Sealed Defendant 1,

*Defendants.*

## TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .  2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . .  3

    A.   The Indictment of Lopez Bello and His Co-Conspirators . . . . . . . . . . . . . . . . . . . . . . . .  3

    B.   The Underlying OFAC Designation . . . . . .  5

    C.   Lopez Bello's Life in the United States . . . .  7

    D.   Lopez Bello's Motion to Dismiss . . . . . . . . .  8

    E.   The District Court's Denial of Lopez Bello's Motion to Dismiss . . . . . . . . . . . . . . . . . . . . .  9

ARGUMENT:

POINT I—The District Court Correctly Concluded that Lopez Bello Is a Fugitive. . . . . . . . . . . . . . . . .  11

    A.   Applicable Law . . . . . . . . . . . . . . . . . . . . . . .  11

    B.   Discussion . . . . . . . . . . . . . . . . . . . . . . . . . .  13

POINT II—The District Court Did Not Abuse Its Discretion in Applying the Fugitive Disentitlement Doctrine to Lopez Bello . . . . . .  22

    A.   Applicable Law . . . . . . . . . . . . . . . . . . . . . . .  23

    B.   Discussion . . . . . . . . . . . . . . . . . . . . . . . . . .  24

        1.   Assuring the Enforceability of Any Decision . . . . . . . . . . . . . . . . . . . . . . . .  24

ii

PAGE

2. Flouting the Judicial Process . . . . . . . 26

3. Discouragement of Flight . . . . . . . . . . 27

4. Prejudice to the Government by the
   Defendant's Fugitive Status . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

*Cases*:

*Degen v. United States*,
   517 U.S. 820 (1996). . . . . . . . . . . . . . . . . . . . . 11, 12

*Empire Blue Cross & Blue Shield v. Finkelstein*,
   111 F.3d 278 (2d Cir. 1997) . . . . . . . . . . . . . . . . . 12

*Hanson v. Phillips*,
   442 F.3d 789 (2d Cir. 2006) . . . . . . . . . . . . . . . . 12

*In re Grand Jury Subpoenas dated March 9, 2001*,
   179 F. Supp. 2d 270 (S.D.N.Y. 2001) . . . . . . 11, 13

*In re Hijazi*,
   589 F.3d 401 (7th Cir. 2009) . . . . . . . . . . . . . . . 17

*Lopez Bello v. Smith*,
   651 F.Supp.3d 20 (D.D.C. 2022) . . . . . . . . . . . . 29

*Molinaro v. New Jersey*,
   396 U.S. 365 (1970). . . . . . . . . . . . . . . . . . . . . . 12

iii

PAGE

*Nen Di Wu v. Holder*,
　646 F.3d 133 (2d Cir. 2011) . . . . . . . . . . . . . . . . . 12

*SEC v. Berger*,
　322 F.3d 187 (2d Cir. 2003) . . . . . . . . . . . . . . 23, 25

*Stansell v. Lopez Bello*,
　802 F. App'x 445 (11th Cir. 2020) . . . . . . . . . . . 17

*Stansell v. Revolutionary Armed Forces of Colombia*,
　45 F.4th 1340 (11th Cir. 2022). . . . . . . . . . . . . . 19

*Stansell v. Revolutionary Armed Forces of Colombia*,
　19 Civ. 20896 (RNS) (ECF No. 536) (S.D. Fla. Oct.
　19, 2022)　. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. $45,940 in United States Currency*,
　739 F.2d 792 (2d Cir. 1984) . . . . . . . . . . . . . 13, 16

*United States v. Awadalla*,
　357 F.3d 243 (2d Cir. 2004) . . . . . . . . . . . . . . . . 28

*United States v. Bescond*,
　24 F.4th 759 (2d Cir. 2021) . . . . . . . . . . . . . *passim*

*United States v. Blanco*,
　861 F.2d 773 (2d Cir. 1988) . . . . . . . . . . 13, 14, 26

*United States v. Cornelson*,
　595 F. Supp. 3d 265 (S.D.N.Y. 2022). . . . . . . 21, 22

*United States v. Eng*,
　951 F.2d 461 (2d Cir. 1991) . . . . 11, 12, 14, 18, 26

*United States v. Morgan*,
　254 F.3d 424 (2d Cir. 2001) . . . . . . . . . . . . . . . . 23

iv

PAGE

*United States v. Zedner*,
  555 F.3d 68 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . 23

*Statutes, Rules, and other Authorities:*

31 C.F.R. § 598.406(b) . . . . . . . . . . . . . . . . . . . . . . . 6

Sanctions Actions Pursuant to the Foreign Narcotics
  Kingpin Designation Act—Notice, 82 Fed. Reg.
  11,101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

U.S. Dep't of the Treasury, *Treasury Sanctions
  Prominent Venezuelan Drug Trafficker Tareck El
  Aissami and His Primary Frontman Samark
  Lopez Bello* (Feb. 13, 2017), available at https://
  home.treasury.gov/news/press-releases/as0005
  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8, 29

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 23-6456

———————

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

SAMARK JOSE LOPEZ BELLO, also known as Samark
Lopez Delgado, also known as Sierra Lima,

*Defendant-Appellant,*

VICTOR MONES CORO, also known as Sealed
Defendant 1, ALEJANDRO MIGUEL LEON MAAL, also
known as Alejandro Leon, ALEJANDRO ANTONIO
QUINTAVALLE YRADY, MICHOLS ORSINI
QUINTERO, TAREK ZAIDAN EL AISSAMI MADDAH, also
known as Tareck El Aissami, also known as El
Troupial, also known as Tango Alpha, also known as
T.E.A., JOSELIT RAMIREZ CAMACHO, also known as
J.L., also known as Jose Lit, ALEJANDRO JAVIER
MARIN, also known as Sealed Defendant 1,

*Defendants.*

———————

## BRIEF FOR THE UNITED STATES OF AMERICA

———————

2

### Preliminary Statement

Samark Jose Lopez Bello seeks interlocutory review of an order entered on May 2, 2023, in the United States District Court for the Southern District of New York, by the Honorable Alvin K. Hellerstein, United States District Judge, denying Lopez Bello's motion to dismiss the indictment.

Superseding Indictment S5 19 Cr. 144 (AKH) (the "Indictment") was filed on March 13, 2020, charging a total of eight counts against Lopez Bello and two Venezuelan officials. Lopez Bello was charged in six of those counts with conspiracy to defraud the United States by obstructing the lawful governmental functions of the Treasury Department's Office of Foreign Assets Control ("OFAC"), in violation of 18 U.S.C. § 371 (Count One); conspiracy to violate and evade the provisions of the Foreign Narcotics Kingpin Designation Act (the "Kingpin Act") and the implementing Foreign Narcotics Kingpin Sanctions Regulations (the "Kingpin Act Regulations"), in violation of 21 U.S.C. §§ 1906(a), 1904(c)(1), and 1904(c)(2) (Count Four); two counts of engaging in prohibited transactions in blocked property under the Kingpin Act and Kingpin Act Regulations, in violation of 21 U.S.C. §§ 1906(a)(2), 1904(c)(1), and 18 U.S.C. § 2 (Count Five and Count Seven); and two counts of evading the provisions of the Kingpin Act and Kingpin Act Regulations, in violation of 21 U.S.C. §§ 1906(a)(2), 1904(c)(2), and 18 U.S.C. § 2 (Count Six and Count Eight).

On September 16, 2022, Lopez Bello, through counsel and without having made any personal appearance in the District Court, filed a motion to dismiss the

3

Indictment. On May 2, 2023, after hearing oral argument, Judge Hellerstein entered a written order denying Lopez Bello's motion, ruling that Lopez Bello was a fugitive and therefore disentitled from challenging the Indictment. Judge Hellerstein also ruled in the alternative denying Lopez Bello's motion to dismiss on the merits.

## Statement of Facts

### A. The Indictment of Lopez Bello and His Co-Conspirators

On March 1, 2019, a grand jury sitting in the Southern District of New York returned a five-count superseding indictment charging Lopez Bello and several co-defendants with violations of the Kingpin Act, 21 U.S.C. § 1901 *et seq.*, and the Kingpin Act Regulations, 31 C.F.R. Part 598. (A. 50-68).[1] In July 2019, U.S. Immigration and Customs Enforcement named Lopez Bello one of its top-10 most wanted fugitives based on these charges. (A. 73). On March 13, 2020, the grand jury returned the eight-count Indictment, which included six counts charging Lopez Bello. Count One charged Lopez Bello with conspiracy to defraud the United States by obstructing the lawful

———————

[1] "Dkt." refers to an entry on the District Court's docket for this case; "Br." refers to Lopez Bello's brief on appeal; "A." refers to the appendix filed with that brief. Unless otherwise noted, case text quotations omit internal quotation marks, citations, footnotes, and previous alterations.

4

governmental functions of OFAC, in violation of 18 U.S.C. § 371. (A. 69-81). Count Four charged him with conspiracy to violate and evade the provisions of the Kingpin Act and Kingpin Act Regulations, in violation of 21 U.S.C. §§ 1906(a), 1904(c)(1), and 1904(c)(2). (A. 86-89). Count Five and Count Seven each charged Lopez Bello with engaging in prohibited transactions in blocked property under the Kingpin Act and Kingpin Act Regulations, in violation of 21 U.S.C. §§ 1906(a)(2), 1904(c)(1), and 18 U.S.C. § 2, in violation of 21 U.S.C. §§ 1906(a)(2), 1904(c)(1), and 18 U.S.C. § 2. (A. 90-91, 92-93). Count Six and Count Eight each charged Lopez Bello with evading the provisions of the Kingpin Act and Kingpin Act Regulations, in violation of 21 U.S.C. §§ 1906(a)(2), 1904(c)(2), and 18 U.S.C. § 2. (A. 91-92, 94-95).

The Indictment alleges that beginning in or about February 2017, up to and including in or about March 2019, Lopez Bello conspired with Tareck Zaidan El Aissami Maddah ("El Aissami"), who was the former vice president of Venezuela and later the Venezuelan Minister of Industry and National Production, Joselit Ramirez Camacho, who was the Superintendent of Cryptocurrencies for Venezuela, and others, to violate and evade sanctions imposed by OFAC pursuant to the International Emergency Economic Powers Act and the Kingpin Act. (A. 69-70, 72-73). As alleged, El Aissami and Lopez Bello, who were both OFAC-sanctioned Specially Designated Narcotics Traffickers ("SDNTs"), used U.S.-based companies to charter flights, including on U.S.-registered aircraft, in connection with travel in and between Venezuela, Russia, Turkey, and the Dominican Republic, among other

5

places. (A. 71). El Aissami and Lopez Bello allegedly paid U.S. persons and U.S.-based companies for the private flights and other flight-related services by, among other means, using associates to deliver bulk cash in Caracas, Venezuela to be smuggled into the United States. (A. 71-72).

## B. The Underlying OFAC Designation

On February 13, 2017, OFAC designated El Aissami and Lopez Bello as SDNTs pursuant to the Kingpin Act. (A. 77-78). OFAC's designations of El Aissami and Lopez Bello were predicated on their roles in state-sponsored drug trafficking and money laundering activities in Venezuela. *See* U.S. Dep't of the Treasury, *Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark Lopez Bello* (Feb. 13, 2017), available at https://home.treasury.gov/news/press-releases/ as0005 (last visited Nov. 20, 2023) ("OFAC Release").[2] In announcing the designations, OFAC stated that El Aissami played a "significant role in international narcotics trafficking," and that Lopez Bello was El Aissami's "primary frontman." With respect to Lopez Bello in particular, OFAC went on to explain that he "launders drug proceeds" and "handles business arrangements and financial matters for El Aissami, generating significant profits as a result of illegal activity benefiting El Aissami." *Id.* In connection with the

---

[2]   *See also* Sanctions Actions Pursuant to the Foreign Narcotics Kingpin Designation Act—Notice, 82 Fed. Reg. 11,101 (Feb. 17, 2017).

6

announcement, OFAC also blocked five of Lopez Bello's U.S.-based companies as well as a U.S.-registered aircraft, real property located in the Miami, Florida area, and other assets. *Id.*

As a result of OFAC's designation of Lopez Bello as a SDNT, U.S. persons were prohibited from conducting transactions with Lopez Bello, and both U.S. and foreign persons were prohibited from conducting transactions with Lopez Bello that involved U.S. persons or entities, or that involved funds or property in the United States in which Lopez Bello had an interest. The pertinent regulations specifically prohibit, among other things, "transportation" services. 31 C.F.R. § 598.406(b). However, as alleged in both the original indictment that charged Lopez Bello and in the subsequently filed Indictment, Lopez Bello and El Assaimi quickly began violating the OFAC sanctions by arranging flights through Victor Mones Coro, a U.S. citizen who had a Florida company, American Charter Services, that provided charter flights, and Alejandro Miguel Leon Maal, a U.S. citizen who worked with Mones Coro. (A. 51-52, 55). Lopez Bello paid Mones Coro and American Charter Services to use U.S.-based planes, pilots, employees, and logistical infrastructure to continue working on behalf of Lopez Bello in the United States and to organize flights to transport Lopez Bello, his family members, and his associates. (A. 59-60, 71-72). Mones Coro and Leon Maal were charged as co-defendants in the 2019 indictment. Mones Coro has since entered a guilty plea and been sentenced for his role in the scheme, and Leon Maal's case is currently pending. (A. 35).

7

### C. Lopez Bello's Life in the United States

In 2021, Lopez Bello filed a civil lawsuit in the United States District Court for the District of Columbia, in which he challenged OFAC's designation of him under the Kingpin Act. *Lopez Bello v. Smith*, No. 21 Civ. 1727 (RBW) (D.D.C. 2021). In that case, Lopez Bello filed an affidavit in which he acknowledged that at the time OFAC issued its SDNT designations, he was living in the United States with his family. (*See* Dkt. 256-1 (Declaration of Samark Jose Lopez Bello Pursuant to 28 U.S.C. § 1746, *Lopez Bello v. Smith*, No. 21 Civ. 01727 (RBW) (D.D.C. Oct. 4, 2021) ("Lopez Bello Declaration")). By Lopez Bello's own account, he possessed L1 and B1/B2 United States visas "to engage in, and support, business activities in the United States," among other purposes, including "to engage in, and support, PYP International LLC, an entity formed under the laws of Florida" that he "owned and controlled" and which was the U.S. affiliate of Lopez Bello's OFAC-sanctioned Venezuelan company Profit Corporation C.A. (*Id.* ¶ 4; *see also* A. 73, 77-78). He had "spent a substantial amount of time traveling to, and resident in, the United States," residing in Coral Gables, Florida with his wife and minor children, two of whom are United States citizens. (Lopez Bello Declaration ¶ 5). His children were enrolled in primary school in Coral Gables and his eldest child was studying at the University of Miami. (*Id.* ¶ 8). According to Lopez Bello's declaration, he sought to make the United States his "permanent home." (*Id.*).

In connection with his personal and business ties to the United States, Lopez Bello owned "significant

8

real property and other assets in the Miami, Florida area." OFAC Release. In his Amended Complaint in his lawsuit challenging the OFAC designation, Lopez Bello claimed to be the owner of a number of specific properties in the United States. (*See* Dkt. 256-2 ¶ 87 (Amended Complaint, *Lopez Bello v. Smith*, No. 21 Civ. 01727 (RBW) (D.D.C. Oct. 4, 2021) ("Lopez Bello Amended Complaint")). According to Lopez Bello's Amended Complaint, his U.S.-based properties included multiple units in a high-rise residential building on Brickell Avenue in Miami, Florida, a large private residence in Coral Gables, Florida, and other properties (*Id.* ¶¶ 88-93, 105); four vehicles including "a Black 2014 Rolls-Royce Wraith Coupe; a Silver 2015 Bentley Continental Coupe; a Red 2012 Ferrari 458 Convertible; and a Black 2016 Cadillac Escalade" (*Id.* ¶ 94); various bank and brokerage accounts (*Id.* ¶¶ 96-99); a "Gulfstream 200 jet aircraft" (*Id.* ¶ 100); and two "vessels" (*Id.* ¶¶ 101-104).

## D. Lopez Bello's Motion to Dismiss

On September 16, 2022, Lopez Bello, through counsel and without having made any personal appearance before the District Court, filed a motion to dismiss the Indictment. (A. 99). Lopez Bello raised several arguments in his motion, including (i) that he does not fall within the class of persons chargeable under the Kingpin Act, (ii) that the presumption against extraterritoriality precludes his charges under both the Kingpin Act and 18 U.S.C. § 371, and (iii) that the Government has not properly alleged a *Klein* conspiracy under 18 U.S.C. § 371. (Dkt. 255).

9

The Government opposed that motion on October 21, 2022, arguing that the District Court should apply the fugitive disentitlement doctrine and therefore decline to consider the motion on the merits. (Dkt. 256). On December 14, 2022, the District Court ordered the Government to respond to Lopez Bello's motion on the merits. (Dkt. 261). On January 13, 2023, the Government filed a supplemental opposition to Lopez Bello's motion, arguing that (i) Lopez Bello is appropriately charged in the Indictment under the Kingpin Act, (ii) that both the charges under the Kingpin Act and 18 U.S.C. § 371 are not being applied extraterritorially, and even still, the presumption against extraterritoriality would not apply, and (iii) that the Government has properly alleged a *Klein* conspiracy under 18 U.S.C. § 371. (Dkt. 265).

## E.  The District Court's Denial of Lopez Bello's Motion to Dismiss

On April 26, 2023, the district court heard oral argument on Lopez Bello's motion to dismiss. (A. 110-43). During the hearing, which was attended by defense counsel but which Lopez Bello did not personally attend, Judge Hellerstein found that Lopez Bello is a fugitive and ruled that he was disentitled from challenging the Indictment. The district court then ruled in the alternative on the merits of Lopez Bello's motion and (i) concluded that the Kingpin Act applied to Lopez Bello's conduct alleged in the Indictment, (ii) rejected Lopez Bello's extraterritoriality arguments with respect to both the King Act and *Klein* conspiracy counts, and (iii) found that the Indictment sufficiently alleged a *Klein* conspiracy. (A. 133-40). Following the hearing,

10

Judge Hellerstein issued a written order reaching the same conclusions that he initially articulated during the hearing. (A. 144-47).

In finding Lopez Bello to be a fugitive, Judge Hellerstein applied this Court's decision in *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021). (A. 145-46). Referring to OFAC's SDNT designation of Lopez Bello, Judge Hellerstein reasoned that "a person so publicly named can legitimately feel that a prosecution is next and [he]'d better get out of here," which would fit such a definition of a fugitive. (A. 122-23). He explained that "if someone anticipates the probability of criminal prosecution and then runs away or just moves away, [and] before that time was a consistent resident of the United States, one could say he fled . . . evaded or escaped arrest." (A. 124). Judge Hellerstein also found that Lopez Bello was distinguishable from the defendant in *Bescond*, pointing to "the roots" that Lopez Bello had in the United States, including the substantial time spent year-round in the United States, the enrollment of his children in U.S. schools, and property owned in the United States. (A. 126-28). He further observed that "in spite of these substantial connections, [Lopez Bello] never came to the United States after February 2017" and concluded that, unlike the defendant in *Bescond*, Lopez Bello's "presence abroad . . . is inextricable from this prosecution." (A. 127-28, 145).

Judge Hellerstein next considered the four independent purposes behind the fugitive disentitlement doctrine, and concluded that they are served through Lopez Bello's disentitlement. Accordingly, the district court ruled that Lopez Bello is not entitled to seek the

11

substantive relief in his motion to dismiss. (A. 129-31, 145-46).

**A R G U M E N T**

**POINT I**

**The District Court Correctly Concluded that Lopez Bello Is a Fugitive**

Lopez Bello contends that the district court erred in labeling him a fugitive because, like the defendant in *Bescond*, he was outside the United States during the alleged offenses, and he continues to reside in his native country of Venezuela. Lopez Bello's argument should be rejected. The district court properly found that Lopez Bello's long residence in the United States prior to being designated by OFAC and other substantial ties to the United States demonstrate that his presence abroad and refusal to return are inextricable from the prosecution and the offenses for which he is being prosecuted.

**A.   Applicable Law**

The fugitive disentitlement doctrine is "grounded on the impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him." *United States v. Eng*, 951 F.2d 461, 465 (2d Cir. 1991), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820 (1996); *see also In re Grand Jury Subpoenas dated March 9, 2001*, 179 F. Supp. 2d 270, 285-86 (S.D.N.Y.

12

2001) (noting the longstanding principle that "the fugitive from justice may not seek relief from the judicial system whose authority he or she evades") (quoting Martha B. Stolley, *Sword or Shield: Due Process & the Fugitive Disentitlement Doctrine*, 87 J. Crim. L. & Criminology 751, 752 (1997)). A court may therefore "decline to entertain the claims of a defendant who is a fugitive from justice." *Bescond*, 24 F.4th at 764 (citing *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970)); *Nen Di Wu v. Holder*, 646 F.3d 133, 135 & n.2 (2d Cir. 2011)); *see also Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997) ("This Court—as well as the other Courts of Appeals—has adopted the fugitive from justice rule, also known as the fugitive disentitlement doctrine.").

The doctrine, which stems from courts' "inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities," *Degen*, 517 U.S. at 823, is an equitable one that may be invoked at the court's discretion. *See Hanson v. Phillips*, 442 F.3d 789, 795 (2d Cir. 2006). Before determining whether to exercise its discretion to apply the doctrine, however, a court must first determine whether the defendant is a fugitive. *Bescond*, 24 F.4th at 771.

There are two categories of fugitives: "(1) traditional fugitives and (2) constructive-flight fugitives." *Id*. When a defendant "actively resists extradition, or refuses to appear at his arraignment, he has constructively fled the United States and thus is a fugitive." *Eng*, 951 F.2d at 466. Furthermore, when assessing whether a defendant is a fugitive, the:

13

> intent to flee from prosecution or arrest
> may be inferred from a person's failure to
> surrender to authorities once he learns
> that charges against him are pending.
> This is true whether the defendant leaves
> the jurisdiction intending to avoid prose-
> cution, or, having learned of charges
> while legally outside the jurisdiction,
> "constructively flees" by deciding not to
> return.

*United States v. $45,940 in United States Currency*,
739 F.2d 792, 796 (2d Cir. 1984), *abrogated on other
grounds by Degen*. A defendant can be a fugitive "even
when he does not 'flee' but is simply found outside the
jurisdiction." *In re Grand Jury Subpoenas dated
March 9, 2001*, 179 F. Supp. 2d at 287. This Court has
similarly noted that "[a] person can be said to be a fu-
gitive when, while abroad, they learn that they are un-
der indictment and make no effort to return to the
United States to face charges." *United States v.
Blanco*, 861 F.2d 773, 779 (2d Cir. 1988). Boiled down
to its essence, "[f]ugitivity implies some action by [a
defendant] to distance herself from the United States
or frustrate arrest." *Bescond*, 24 F.4th at 771.

This Court reviews a determination of whether a
defendant meets the definition of a fugitive *de novo*.
*Id.* at 771.

## B.   Discussion

Lopez Bello qualifies as a fugitive under the legal
principles set forth above. There is no dispute that he
learned of the criminal charges against him while he

14

was outside the jurisdiction and that he has made "no effort to return to the United States to face charges." *Blanco*, 861 F.2d at 779. That conduct makes him a constructive-flight fugitive, which this Court has defined as a person who "refuses to appear at his arraignment," meaning that he "has constructively fled the United States and thus is a fugitive." *Eng*, 951 F.2d at 466.

In an effort to avoid the straightforward application of these principles here, Lopez Bello argues that he is comparable to the defendant whom this Court found not to be a fugitive in *Bescond*. That argument fails, however, because there are multiple factors that differentiate this case from *Bescond*. First, in *Bescond*, the Court based its holding on the fact that the defendant had taken no "action . . . to distance herself from the United States or frustrate arrest." *Bescond*, 24 F.4th at 771. Here, by contrast, the district court properly found that Lopez Bello has taken deliberate action to distance himself from the United States, which has frustrated the ability of the United States to arrest him. This is because, unlike the defendant in *Bescond*, Lopez Bello has deep personal ties to the United States and the district court reasonably concluded that his absence from the country is attributable to his desire to avoid arrest.

As noted, while this case was pending, in the fall of 2021, Lopez Bello filed a lawsuit in the District of Columbia to challenge OFAC's designation of him as a SDNT, and he affirmatively invoked his overwhelming connections to the United States as part of that lawsuit. (*See* Lopez Bello Amended Complaint). Lopez

15

Bello asserted that prior to his 2017 Kingpin Act designation, he resided at the home he owned in Coral Gables, Florida, he "maintained a substantial presence in the United States, having made the United States his intended home," he "spent a substantial amount of time in the years prior to his designation resident in the United States," and he "was physically present in the United States . . . approximately a week before his designation." (*Id.* ¶¶ 120-121).

In support of his civil lawsuit, Lopez Bello also filed a sworn declaration stating that until February 2017, when he was sanctioned by OFAC and when his criminal conduct underlying the instant charges began, he was "resident in the United States." (Lopez Bello Declaration ¶ 7). He further declared that he had enrolled his minor children—two of whom are U.S. citizens—in a primary school in the United States, that his daughter attended the University of Miami, that he regularly traveled to the United States for extended periods of time, and that it was "our family's intent to make our permanent home in the United States." (*Id.* ¶ 8). In addition, Lopez Bello possessed multiple visas to enter the United States for both business and personal reasons, owned and operated several businesses in the United States, and participated in social clubs in the United States. (*Id.* ¶¶ 3-4). Lopez Bello relied on these facts in his brief opposing a motion to dismiss and seeking summary judgment in the civil litigation, in which his counsel noted that Lopez Bello was "physically present in the United States" prior to his designation, that he "created a life for his family in the United States," and that his ownership of "various residential properties, various vehicles, vessels, and an

16

aircraft" in the United States further demonstrated his "substantial presence in the United States." *See* Opp'n to Mot. to Dismiss and Motion for Summary Judgment, *Lopez Bello v. Smith*, 21 Civ. 1727 (RBW) (D.D.C. Dec. 12, 2021) (ECF No. 11) at 29.

These facts squarely distinguish Lopez Bello from the defendant in *Bescond*. *See Bescond*, 24 F.4th at 774 (concluding that there existed "no reason" for Bescond to travel to the United States, because the Government had "not shown that she has residence, immigration status, job, or family in this country"). Lopez Bello has abundant reasons to travel to the United States, to the extent that, during the pendency of this criminal prosecution, he has filed a lawsuit challenging his designation by OFAC in which he affirmed his deep connections to this country, and yet he has refused to return and face the criminal charges at issue here. In his brief on appeal, Lopez Bello argues that he is barred from travel to the United States due to his designation (Br. 15-16), but he does not claim that he has taken any steps to seek to appear here for his arraignment. *See $45,940 in United States Currency*, 739 F.2d at 796 (applying fugitive disentitlement doctrine where defendant "never contacted the United States Consulate to seek application for admission to the United States to appear at his arraignment"). Notably, Lopez Bello has relied on his extensive ties to the United States as a basis for seeking relief from the OFAC designation in the United States courts, while never seeking permission to return to appear in his criminal case.

Lopez Bello's possession of extensive real and personal property in the United States is an additional

17

factor that distinguishes this case from *Bescond*. There, in discussing how to evaluate whether a defendant is a fugitive, the Second Circuit cited and quoted from a Seventh Circuit case that noted that prior physical presence in the United States and ownership of property in the United States were factors that weighed in favor of a finding that a person was a fugitive. *Bescond*, 24 F.4th at 772 (defendant would be found not to be a fugitive when he had "never been in the country, . . . never set foot in Illinois, and . . . own[ed] no property in the United States") (quoting *In re Hijazi*, 589 F.3d 401, 412 (7th Cir. 2009). Lopez Bello conspicuously makes no mention of his ownership of United States property in his brief, a fact that undermines his reliance on *Bescond*. Lopez Bello owned several properties, multiple yachts, an airplane, and multiple automobiles in the United States —all of which he continued to own even after he was indicted and became a fugitive in Venezuela.

Moreover, during the pendency of this criminal case, those properties have become the subject of litigation in Florida brought by victims of the Revolutionary Armed Forces of Colombia ("FARC"), a terrorist organization, who have alleged that Lopez Bello is an agency or instrumentality of the FARC and have sought to recover his properties as compensation for their damages. *See Stansell v. Lopez Bello*, 802 F. App'x 445, 447 (11th Cir. 2020) (affirming order to execute, levy, and sell several assets belonging to Lopez Bello, including "three parcels of real property, two vessels (yachts), an aircraft, and four automobiles," all located in the United States). Given his real estate portfolio and other property here, and especially in

18

light of the ongoing litigation over that property, Lopez Bello has had significant reason to travel here, as he did regularly before his designation and indictment. His reason for not doing so is quite plainly to avoid the jurisdiction of the courts here.

Lopez Bello's selective invocation of the jurisdiction of courts in the United States is yet another factor that distinguishes his case from *Bescond*. As noted, he affirmatively brought suit in the District of Columbia, and has filed motions both in this criminal case and in the civil case against him in Florida, but he has refused to appear personally and subject himself to the courts' jurisdiction. This is exactly the type of gamesmanship that the fugitive disentitlement doctrine is meant to prevent. *Eng*, 951 F.2d at 465 (noting that the fugitive disentitlement doctrine "is grounded on the impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him"). Indeed, as recently as October 2022, Lopez Bello refused to appear at a deposition in the Florida case brought by the FARC victims. In that case, the court "clearly (and repeatedly) ordered Mr. Lopez to appear for his deposition," but Lopez Bello refused to do so for the obvious reason that he refuses to come to the United States to face the charges against him. *Stansell v. Revolutionary Armed Forces of Colombia*, 19 Civ. 20896 (RNS) (ECF No. 536 at 5) (S.D. Fla. Oct. 19, 2022). It thus cannot be said that Lopez Bello's "presence abroad is unrelated to the American prosecution." *Bescond*, 24 F.4th at 773. On the contrary, Lopez Bello is plainly "refusing to return to the United States to avoid prosecution." *Id.* at 772.

19

In light of these facts, it is no surprise that the Eleventh Circuit has already held that Lopez Bello is a fugitive, another fact that Lopez Bello fails to acknowledge in his opening brief. In ruling on Lopez Bello's appeal from the Florida district court's determination that he is an agency and instrumentality of the FARC, the Eleventh Circuit first considered application of the fugitive disentitlement doctrine. On the initial question, whether Lopez Bello is a fugitive due to his failure to appear in this criminal case, the court held that he is. *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1348 (11th Cir. 2022) ("Mr. Lopez has not turned himself in or been arrested, and remains a fugitive."). The Eleventh Circuit then went on to remand the case to the district court to determine whether to exercise its discretion to apply the fugitive disentitlement doctrine, noting the existence of mixed case law about application of the doctrine in civil cases. *Id.*[3] Indeed, at oral argument before the Eleventh

_____

[3]    On remand, the Florida district court denied certain discovery motions brought by Lopez Bello on the basis of the fugitive disentitlement doctrine. *Stansell v. Revolutionary Armed Forces of Colombia*, 19 Civ. 20896 (RNS) (ECF No. 536 at 3) (S.D. Fla. Oct. 19, 2022). The court did not use the fugitive disentitlement doctrine as a basis to enter judgment against Lopez Bello, but it did enter a default judgment against Lopez Bello in light of his refusal to obey court orders and participate in discovery. In doing so, it noted Lopez Bello's fugitive status. *Id.* at 5 ("Further, the Court generally lacks an ability to compel Mr. Lopez to obey its orders and require him to participate

20

Circuit, Lopez Bello's counsel contested whether the court should apply the fugitive disentitlement doctrine, but conceded the initial fact that Lopez Bello was a fugitive, in stark contrast to his position in this case. (*See* Dkt. 256-4 at 7 (Oral Arg. Tr., *Stansell v. Revolutionary Armed Forces of Colombia*, No. 20-11736, (11th Cir. Feb. 9, 2022) (CHIEF JUDGE PRYOR: And under those rulings, he is a fugitive? MR. FELS: We would say, again, we think it would be an improper application, but yes. *We don't think there's any real argument there*.) (emphasis added)).

Just as the Eleventh Circuit concluded, and as Lopez Bello even conceded in that court, this Court should also find that Lopez Bello is a fugitive. His life prior to his designation by OFAC was overwhelmingly based in the United States, he has ample business and property in the United States and every reason to return here, and he only currently remains in Venezuela as a "sanctuary" and an "escape from the reach of law." *Bescond*, 24 F.4th at 773.

In his opening brief, Lopez Bello emphasizes the fact that he departed this country in February 2017, around the same time as his designation by OFAC, and approximately two years before the criminal charges against him were brought. (Br. 14). That argument, however, is of little help to Lopez Bello given the nature of the crime alleged in the Indictment. As alleged, since immediately after he was designated, Lopez

---

in discovery based on the Defendants' conduct and Mr. Lopez's fugitive status.").

21

Bello has conspired with others to benefit from the provision of services from U.S.-based companies, individuals, and aircraft, while not actually traveling to the United States. His physical absence from the United States was not due to an independent decision on his part to return to Venezuela, but due to his designation as a SDNT. And the Indictment alleges that despite this designation, he regularly and illegally availed himself of the benefits of his personal and business connections in the United States to arrange private flights for himself and others.[4] Thus, as Judge Hellerstein concluded, Lopez Bello's "presence abroad, in stark contrast to the defendant in *Bescond*, is inextricable from this prosecution" (A. 145), as it is directly connected to both his OFAC designation and his scheme to evade and violate the OFAC sanctions imposed on him as a result of that designation.

In addition to his reliance on *Bescond*, Lopez Bello also cites *United States v. Cornelson*, 595 F. Supp. 3d

––––––––––

[4] This is yet another difference from *Bescond*, where the defendant allegedly participated in a scheme to manipulate the LIBOR rate while living and working in Paris, which "affected the pricing of futures contracts traded on the Chicago Mercantile Exchange." *Bescond*, 24 F.4th at 764. Here, as Judge Hellerstein recognized, Lopez Bello is not being prosecuted on the basis of downstream domestic effects of his conduct, but on his domestic conduct directly, specifically his participation in "'transaction[s] . . . within the United States' within the meaning of the Kingpin Act." (A. 146 (quoting 21 U.S.C. § 1904(c)(1)-(2))).

22

265 (S.D.N.Y. 2022). (Br. 18-19). But that case does not support Lopez Bello's position here. Unlike Lopez Bello, the defendant in *Cornelson* never invoked the jurisdiction of U.S. courts in related matters, never described himself as a resident of the United States immediately before his departure, never expressed an intention of making the United States his "permanent home," and while Cornelson owned "a vacation home" in the United States, *id.* at 271, he never made a life here as Lopez Bello has—including by placing his U.S. citizen children in primary schools, and conducting his business and family life in the United States. The totality of the circumstances here support the conclusion reached by the district court and by the Eleventh Circuit regarding Lopez Bello: that he is a fugitive because he has purposefully absented himself from the United States and has taken "action ... to distance [him]self from the United States or frustrate arrest." *Bescond*, 24 F.4th at 771.

## POINT II

## The District Court Did Not Abuse Its Discretion in Applying the Fugitive Disentitlement Doctrine to Lopez Bello

Lopez Bello contends that the district court erred in its conclusion that the objectives of the fugitive disentitlement doctrine are best served by application of the doctrine to Lopez Bello. The district court did not err and was well within its substantial discretion to disentitle Lopez Bello as a fugitive.

23

### A. Applicable Law

After determining whether a defendant qualifies as a fugitive, the court considers whether disentitling the fugitive would serve the objectives of the fugitive disentitlement doctrine. Those objectives are: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." *Bescond*, 24 F.4th at 773-74; *see also United States v. Zedner*, 555 F.3d 68, 77 (2d Cir. 2008) (listing four objectives of fugitive disentitlement doctrine). Any one of these justifications can serve as a basis for applying the doctrine. *See Zedner*, 555 F.3d at 77 (each of the four justifications "is an independently sufficient basis on which to apply the fugitive disentitlement doctrine"); *SEC v. Berger*, 322 F.3d 187, 191-92 (2d Cir. 2003), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) (noting that there are "four *independent* grounds for disentitling fugitives" and that the first and fourth justifications are "the most persuasive") (emphasis added).

This Court reviews a decision to disentitle a fugitive for abuse of discretion. *Bescond*, 24 F.4th at 773; *United States v. Morgan*, 254 F.3d 424, 427 (2d Cir. 2001). A district court abuses its discretion when it:

> 1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that,

24

> though not necessarily the product of a le-
> gal error or a clearly erroneous factual
> finding, cannot be located within the
> range of permissible decisions.

*Bescond*, 24 F.4th at 773.

## B.  Discussion

The district court properly considered each of the purposes of the fugitive disentitlement doctrine, and its conclusion that each would be served by Lopez Bello's disentitlement was well within the range of permissible decisions and not based on any error of law or clearly erroneous factual finding.

### 1.  Assuring the Enforceability of Any Decision

The first purpose of the fugitive disentitlement doc-trine—assuring the enforceability of any judgment rendered against Lopez Bello—clearly weighs in favor of application of the doctrine here. As Judge Heller-stein reasoned, "by causing a disentitlement of certain rights of the defendant, the law promotes the bringing of that defendant to justice here and consequently the enforceability of the judgement." (A. 130). Disentitle-ment is the only means of avoiding the "heads I win, tails you'll never find me" posture that the disentitle-ment doctrine guards against. *Bescond*, 24 F.4th at 774. There is no mutuality where, as here, a ruling in Lopez Bello's favor on the motion to dismiss would dis-pose of the case, and a ruling against Lopez Bello would have no adverse effect on him, instead permit-ting him to maintain the status quo. Moreover, allow-ing Lopez Bello to assert his strong connections to the

25

United States where it benefits him, as in his lawsuit against OFAC in the District of Columbia, but now to hide behind his claimed lack of any connection to the United States to mount a challenge to this criminal prosecution from abroad, is a paradigmatic example of a defendant "gam[ing] the system," which this prong of the fugitive entitlement analysis is meant to address. *Id.* The first justification—one of the two "most persuasive," *Berger*, 322 F.3d at 192—thus counsels strongly in favor of applying the doctrine and disentitling Lopez Bello.

Citing *Bescond*, Lopez Bello argues that disentitlement in this case is "too harsh of a measure to guarantee the enforceability of an adverse decision." (Br. 21). That holding, however, was based on particular circumstances not applicable here, specifically, because the defendant in *Bescond* had "no reason" to travel to the United States" and no "residence, immigration status, job, or family in this country." *Bescond*, 24 F.4th at 774. As noted, Lopez Bello's circumstances are entirely different. Disentitling a defendant such as Lopez Bello with valuable assets in the United States, who previously spent extended periods of time living here and benefitting professionally and personally, whose children are citizens, and who actively avoids apprehension by U.S. law enforcement by having relocated to a country that will not extradite him, is, in contrast, not "disproportionately severe." *Id.*

Notably, in his brief on appeal, Lopez Bello makes no secret of his intention to continue to litigate this case piecemeal. While acknowledging that the district court has already ruled in the alternative against him

26

on his motion to dismiss, he indicates an intention to engage in "further motion practice," including a motion for a bill of particulars, if this Court reverses the district court's fugitive disentitlement ruling. (Br. 25). In essence, Lopez Bello seeks a license to strategically litigate issues of his choice in the district court, and even seek to force the Government to make disclosures to him, while continuing to prevent the Government and the district court from proceeding to trial by refusing to appear. The fugitive disentitlement doctrine exists in significant part to prevent such gamesmanship.

### 2. Flouting the Judicial Process

Applying the doctrine here would rightly impose a penalty for Lopez Bello's flouting the judicial process, *see Bescond*, 24 F.4th at 774, as Judge Hellerstein found. (A. 130). This Court has recognized that "[f]leeing from justice is not always a physical act; it may be a state of mind." *Eng*, 951 F.2d at 464. Thus, "a defendant with notice of criminal charges who actively resists returning from abroad to face those charges is a fugitive from justice." *Id.*; *see also Blanco*, 861 F.2d at 779 ("A person can be said to be a fugitive when, while abroad, they learn that they are under indictment and make no effort to return to the United States to face charges."). Lopez Bello has known for years about the charges against him. He has remained in Venezuela— or other countries unwilling to extradite him to the United States, such as Russia and Turkey—to avoid submitting to United States jurisdiction. And his irreconcilable positions with respect to his relationship to the United States—highlighting his extensive ties to this country when it benefitted his challenge to

27

OFAC's designation in the District of Columbia, conceding that he is a fugitive in response to questioning from the Eleventh Circuit, and now arguing before this Court that he is not a fugitive to avoid being disentitled in his criminal case—only further highlight Lopez Bello's strategic flouting of the judicial process. Considering his motion on the merits would reward, not penalize, that conduct.

### 3. Discouragement of Flight

As the District Court also held, Lopez Bello's disentitlement would discourage flights from justice and promote the efficient operation of the courts. (A. 130). Indeed, allowing Lopez Bello to challenge the Indictment while remaining abroad would incentivize the sort of behavior Lopez Bello has exhibited here in evading justice and would damage the "efficient operation of the courts." *Bescond*, 24 F.4th at 774. While in *Bescond*, this Court held that "given Bescond's circumstances, there exists no cohort of fugitives who would perceive an adjudication of her motions as inducement or inspiration to flee the jurisdiction of our courts," *id.*, that is not at all the case here. Countenancing and considering Lopez Bello's motion would incentivize those, like him, who have substantial connections to the United States and would otherwise have every reason to return to the United States, to voluntarily absent themselves from this country to avoid the reach of U.S. authorities, and instead seek to contest the charges from a safe distance in a non-extradition country. An adjudication on the merits here would signal to those defendants with substantial connections to the United States that they need not return to face charges, but

28

that they can instead engage in selective litigation from abroad.

### 4. Prejudice to the Government by the Defendant's Fugitive Status

Finally, Lopez Bello's fugitive status works considerable prejudice against the Government. *See id.* at 774-75. Lopez Bello was originally charged in March 2019 for conduct occurring between February 2017 and March 2019. Those charges have now been pending for more than four and a half years, and other defendants have entered guilty pleas and been sentenced in the interim, eliminating any potential efficiency from having the co-conspirators' cases proceeding on the same schedule. Additionally, over time, witnesses' memories can fade and evidence can grow stale. That prejudice flows directly from the defendant's decision not to appear to face charges, a decision that impairs the Government's ability to prosecute conduct that overwhelmingly occurred in the U.S.—transactions in the U.S. with U.S. persons and entities in violation of U.S. sanctions. Furthermore, were Lopez Bello permitted to challenge the Indictment from the safety of a non-extraditable country, it would force the Government to spend resources to litigate the merits of any such motions—not to mention use of the District Court's resources—when Lopez Bello is not subjecting himself to the jurisdiction of the District Court. *See United States v. Awadalla*, 357 F.3d 243, 246-47 (2d Cir. 2004) (finding preservation of court resources relevant in considering prejudice overall).

29

Lopez Bello contends that the countervailing prejudice to him is significant due to the substantial "reputational damage" from the Government's allegations in its criminal case. (Br. at 23-24 & n.4). But any such prejudice is overstated, and the suggestion that Lopez Bello is without recourse to challenge the underlying facts is meritless. In particular, Lopez Bello argues that he has suffered prejudice from being painted as "an agent of the Venezuelan regime," and from the implication that he "was involved in drug trafficking, money laundering, and the oppression of the Venezuelan people." (Br. 23). But those accusations are not rooted in the Indictment; they are primarily found in the OFAC designation and accompanying public announcement, which states that Lopez Bello is a "key frontman for [former Venezuelan vice president] El Aissami and in that capacity launders drug proceeds." OFAC Release. The Indictment simply alleges that Lopez Bello conspired to violate the OFAC sanctions against him that resulted from that designation, by arranging private travel through U.S.-based persons and companies. And Lopez Bello has been able to challenge the OFAC designation in litigation he brought in the District of Columbia. In that case, the district court did not apply the fugitive disentitlement doctrine, but considered and rejected Lopez Bello's challenge on the merits, and Lopez Bello has now appealed that decision to the D.C. Circuit. *Lopez Bello v. Smith*, 651 F.Supp.3d 20 (D.D.C. 2022), *appeal docketed*, No. 23-5036 (D.C. Cir. Feb. 21, 2023). Lopez Bello's ability to litigate these issues, including by staking out positions about his relationship to the United States that are contrary to the positions he has asserted in this case,

30

demonstrates that his claims of prejudice from application of the fugitive disentitlement doctrine here are hollow. The real prejudice would come from permitting him to file motions of his choice while preventing the Government from moving forward to trial on the crimes charged in the Indictment.

## CONCLUSION

**The decision of the District Court should be affirmed.**

Dated:    New York, New York
          November 20, 2023

                    Respectfully submitted,

                    DAMIAN WILLIAMS,
                    *United States Attorney for the*
                    *Southern District of New York,*
                    *Attorney for the United States*
                         *of America.*

KEVIN SULLIVAN,
NATHAN REHN,
     *Assistant United States Attorneys,*
               *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 7281 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: NATHAN REHN,
*Assistant United States Attorney*